NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190748-U

NO. 4-19-0748

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.P., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 18JA40 |
| v. | ) | |
| Rasheda P., | ) | Honorable |
| Respondent-Appellant). | ) | Brett N. Olmstead, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment terminating respondent's parental rights, concluding the
record revealed no issue of arguable merit to support an appeal from the judgment.

¶ 2     Respondent, Rasheda P., appeals from the trial court's judgment terminating her

parental rights to D.P. (born April 8, 2010). On appeal, respondent's appellate counsel moves to

withdraw his representation of respondent, claiming any appeal in this cause would be frivolous.

We grant counsel's motion and affirm the judgment of the trial court.

¶ 3                               I. BACKGROUND

¶ 4                          A. Adjudication of Wardship

¶ 5     In April 2018, the State filed a petition for wardship. At the time of filing, the minor

was in protective custody with the Department of Children and Family Services (DCFS), and

respondent was incarcerated in the Champaign County jail. In the petition, the State alleged the

minor was neglected in that her environment was injurious to welfare due, in part, to her exposure to respondent's domestic violence, substance abuse, and untreated mental illness. The State further alleged it would be in the best interests of the minor and the public that the minor be adjudicated a ward of the court. That same month, the trial court entered an order granting temporary custody to DCFS.

¶ 6        On June 19, 2018, the trial court entered an adjudicatory order finding the minor to be neglected based on a stipulation of respondent. The factual basis for the stipulation indicated respondent had a history of incidents involving violence and substance abuse, with the most recent incident occurring in March 2018. During the March 2018 incident, respondent stabbed her roommate in the chest in the presence of the minor.

¶ 7        In July 2018, the trial court entered a dispositional order adjudicating the minor a ward of the court and placing guardianship and custody with DCFS.

¶ 8                                B. Motion to Terminate Parental Rights

¶ 9        In May 2019, the State filed a motion to terminate respondent's parental rights. The State alleged respondent was an unfit parent as she failed to (1) make reasonable efforts to correct the conditions that were the basis for the removal of the minor during the initial nine-month period following the minor's adjudication of neglected (750 ILCS 50/1(D)(m)(i) (West 2018)), namely June 20, 2018, to March 20, 2019, and (2) make reasonable progress toward the return of the minor to her care within the initial nine-month period following the minor's adjudication of neglected (750 ILCS 50/1(D)(m)(ii) (West 2018)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint DCFS as guardian.

¶ 10                                C. Fitness Hearing

¶ 11 Over a four-day period between June and September 2019, the trial court held a fitness hearing. The court heard testimony from two of the minor's caseworkers, a criminal justice case manager, and respondent. The court also, over no objection, admitted into evidence a psychological evaluation report and took judicial notice of its prior orders and the motions and petitions upon which those orders were based.

¶ 12                              1. *The Minor's First Caseworker*

¶ 13 Jonathan Willenborg, a child welfare specialist with DCFS, testified he served as the minor's caseworker from April to November 2018.

¶ 14 Due to respondent's incarceration, Willenborg was unable to assess respondent for services until June 2018. Based on the results from the assessment, Willenborg recommended domestic-violence, substance-abuse, and mental-health services as well as supervised visitation. Willenborg made the necessary referrals for recommended services.

¶ 15 Respondent completed a domestic-violence assessment, which recommended treatment. Respondent did not engage in domestic-violence treatment. Willenborg testified respondent never provided him with proof of completion of domestic-violence treatment.

¶ 16 Respondent completed a substance-abuse assessment, which did not recommend treatment. In September 2018, respondent was arrested after an alcohol-involved altercation. Just prior to her arrest, respondent tested positive on a drug screen for tetrahydrocannabinol (THC). Based on the positive screen, Willenborg re-referred respondent for a substance-abuse assessment. Willenborg testified respondent never provided him with proof of completion of substance-abuse treatment.

¶ 17 Respondent completed a mental-health assessment, which recommended treatment.

Respondent did not engage in mental-health treatment.

¶ 18    With the exception of one to two absences, respondent attended supervised visitation when she was not incarcerated—Willenborg testified respondent was incarcerated for about half the time he was assigned to the case. Visitation occurred twice a month for four hours. Visitation never increased or became unsupervised.

¶ 19    Willenborg referred respondent to a housing-assistance program. In September 2019, respondent was dropped from the program. Respondent never obtained stable housing.

¶ 20    Willenborg had difficulties maintaining contact with respondent—"sometimes she'd have a working number, sometimes she wouldn't."

¶ 21    When Willenborg met with respondent, respondent would sign all necessary consent forms. Respondent would also express a willingness to engage in services.

¶ 22                    2. *The Minor's Second Caseworker*

¶ 23    Mary Henderson, a child welfare specialist with DCFS, testified she had served as the minor's caseworker since December 2018. After receiving the case, Henderson spoke with respondent by telephone and scheduled an in-person meeting for later that day. Respondent, however, did not report to the scheduled meeting.

¶ 24    In April 2019, respondent began attending domestic-violence classes. Henderson testified she had not received any information indicating respondent completed domestic-violence treatment.

¶ 25    Respondent failed to attend all drug screens. During a March 2019 meeting, respondent reported she self-medicated with marijuana to deal with her mental-health issues. Henderson was concerned with respondent's alcohol and drug use. Henderson testified she had

not received any information indicating respondent completed substance-abuse treatment.

¶ 26    In January 2019, respondent contacted Henderson and expressed frustration because she was unable to get medications from her mental-health service provider without engaging in services. Henderson testified respondent stated, " 'I don't want to do that. I only want to get my medication because I have court.' " In March 2019, Henderson recommended respondent complete a psychological evaluation, which respondent completed on March 6, 2019. Henderson was concerned with respondent's mental health. Henderson testified she had not received any information indicating respondent completed mental-health treatment.

¶ 27    With the exception of one absence, respondent attended supervised visitation. Visitation never increased or became unsupervised.

¶ 28    Respondent never obtained stable housing.

¶ 29    Henderson had difficulties maintaining regular contact with respondent.

¶ 30    Henderson testified respondent reported she completed a parenting class while incarcerated in September 2019. Henderson also testified respondent reported she attempted to attend an anger management class for her criminal case but was turned away.

¶ 31    Respondent was generally forthcoming with information. Respondent's willingness to engage in services varied.

¶ 32            3. *Psychological Evaluation Report*

¶ 33    According to the report from the psychological evaluation that respondent completed on March 6, 2019, respondent was diagnosed with bipolar disorder, alcohol use disorder, cannabis use disorder, post-traumatic stress disorder, adult antisocial behavior, and borderline intellectual functioning. Respondent's "severe mental disorders and chronic substance

abuse problems" resulted in "severe impairments in her functioning." Respondent did "not appear capable of caring for herself or meeting her own basic needs" and "presents herself to be in denial of the severity of her mental health and substance abuse problems." Respondent's strengths included her "willingness to cooperate with her DCFS case and her report that she is employed part-time." The report recommended supervised visitation, random drug screens, psychiatric treatment, possible residential treatment, service referrals, and individual counseling.

¶ 34                    4. *Respondent's Criminal Justice Case Manager*

¶ 35          Anitra Nance, a criminal justice case manager, testified she met with respondent in either late February or early March 2018 to discuss available services upon her release from jail. Respondent was cooperative during the meeting.

¶ 36          Around May 2018, respondent contacted Nance and they met a couple of times. During the meetings, respondent expressed a willingness to engage in services.

¶ 37          Sometime after June 20, 2018, respondent signed up for an anger management course. Despite her initial attendance, respondent was dropped from the anger management course due to absences. Respondent reported her absences were employment related.

¶ 38          Despite being required to meet with Nance at least once a month, respondent failed to do so. Around August 2018, Nance closed the case as respondent had not made contact in over 90 days.

¶ 39                             5. *Respondent*

¶ 40          Respondent testified she started attending an anger management course in July 2018, which she found helpful. She was unable to complete the course because of work-related absences.

¶ 41 In September 2018, respondent was arrested and incarcerated after an altercation. Respondent acknowledged she previously pleaded guilty to a domestic battery for a March 2018 altercation. While incarcerated for the September 2018 incident, respondent completed a parenting class.

¶ 42 In October 2018, respondent posted bail and went to live with her sister. In November 2018, respondent's sister passed away, which caused respondent to suffer depression. Respondent also had to move out of her sister's residence as she could not afford the rent. Respondent thereafter was unable to obtain stable housing.

¶ 43 In December 2018, respondent pleaded guilty for the September 2018 incident and was placed on probation for a period of, what she believed to be, a minimum of two years.

¶ 44 Around April 2019, respondent began attending domestic-violence classes. Respondent testified she was "dropped" from the classes a week prior to the fitness hearing.

¶ 45 Respondent attended supervised visitation. The visits went well, and respondent and the minor were bonded.

¶ 46 Respondent testified she met with Henderson on "numerous occasions" and called and left messages for her. Respondent asserted she was not getting the help she needed or having her calls returned.

¶ 47 6. *Trial Court's Ruling*

¶ 48 After considering the evidence and arguments presented, the trial court found respondent was an unfit parent for the reasons alleged in the State's motion to terminate parental rights. With respect to the conflicting testimony concerning respondent's efforts to maintain contact with Henderson, the court found respondent's version of events was "not credible" and she

was "overstating her efforts."

¶ 49                                    D. Best-Interest Hearing

¶ 50          In October 2019, the trial court held a best-interest hearing. The court received a best-interest report. The following is gleaned from the report.

¶ 51          The minor, who was then nine years old, had been placed with her foster parents since April 2018. The minor had a "mother-daughter relationship" with her foster mother, who she had known since birth, and called her "mom." The minor's needs were being met, and she had assimilated into the foster family. The minor was able to maintain relationships with her extended family through her foster mother. The minor had expressed a desire to live with respondent; however, she also said she was happy to stay with her foster parents and be adopted by them. The minor's foster parents expressed a willingness to provide permanency through adoption.

¶ 52          Respondent had not completed recommended services and was charged with violating her probation in her most recent criminal case. Respondent reported to the minor's foster parents she did not attend court the month prior due to an active warrant for her arrest. Respondent continued to be homeless. Respondent reported, when she was unable to stay with friends or in hotel rooms, she would sleep on the street, in unlocked cars, or anywhere she could find. Respondent was unemployed and continued to struggle with substance abuse and mental illness. Respondent attended visits with the minor and was loving and nurturing during those visits.

¶ 53          The author of the best-interest report, Mary Henderson, recommended parental rights be terminated.

¶ 54          After considering the evidence and arguments presented as well as the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (Juvenile Court

Act) (705 ILCS 405/1-3(4.05) (West 2018)), the trial court found it would be in the minor's best interest to terminate respondent's parental rights.

¶ 55    The trial court entered a written order terminating respondent's parental rights, and respondent filed a timely notice of appeal. The court appointed counsel to represent respondent on appeal.

¶ 56    This appeal followed.

¶ 57                                II. ANALYSIS

¶ 58    On appeal, respondent's appellate counsel has filed a motion seeking to withdraw his representation of respondent, claiming any appeal in this cause would be frivolous. Counsel attached to his motion a supporting brief setting forth the claims he considered raising, a sketch of the argument he had to support each of the claims, and explanations why he believes the arguments he had would be frivolous. Counsel also provided this court with an abstract of the record.

¶ 59                    A. Notice of Counsel's Motion to Withdraw

¶ 60    As an initial matter, we must address the attempts to provide respondent with notice of her counsel's motion to withdraw on appeal.

¶ 61    On December 26, 2019, respondent's appointed counsel filed the motion seeking to withdraw his representation of respondent. In the motion, counsel asserted he had been unable to reach respondent despite his efforts to write and call her. On December 27, 2019, this court mailed respondent a letter to her last known address—the Champaign County jail—to inform her that she had been granted leave to file a response to her counsel's motion. The letter was later returned to this court as undeliverable.

¶ 62    The record demonstrates getting in contact with respondent has been difficult

throughout this case due to respondent's lack of stable housing or a reliable, working phone number. Respondent's whereabouts remain unknown, and we are unaware of any attempts by respondent to reach out to her trial counsel, appellate counsel, the State, the trial court, or this court to inquire about the minor's case. We also note our review of the Champaign County circuit clerk's website indicates a petition to revoke probation and warrant of arrest remains pending against respondent in her most recent criminal case.

¶ 63 Based on the circumstances presented, we find the attempts to provide respondent with notice of her counsel's motion to withdraw on appeal sufficient, and the matter is properly subject to disposition.

¶ 64 B. Unfitness Finding

¶ 65 Counsel asserts he considered raising a claim suggesting the trial court's unfitness finding was against the manifest weight of the evidence but concluded any argument in support thereof would be entirely frivolous.

¶ 66 Based on its consideration of the evidence and arguments presented, the trial court found the State had established respondent was an unfit parent due to her failure to make reasonable progress toward the return of the minor to her care within the initial nine-month period following the minor's adjudication of neglected. See 750 ILCS 50/1(D)(m)(ii) (West 2018) (providing a parent will be considered "unfit" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected ***."").

¶ 67 "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752

N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

¶ 68        The evidence showed, during the initial nine-month period following the minor's adjudication of neglected, respondent (1) failed to engage in domestic-violence treatment, (2) continued to use alcohol and drugs, (3) failed to attend all drug screens, (4) committed and was convicted of a criminal offense based on an alcohol-involved altercation, (5) failed to engage in mental-health treatment, (6) failed to obtain stable housing, and (7) failed to maintain contact with the minor's caseworkers. As of March 6, 2019, respondent showed a lack of understanding and acceptance of her substance-abuse and mental-health issues. As the trial court concluded, the report from the psychological evaluation depicts "a person who is nowhere near the point where she could safely care for [the minor]."

¶ 69        Based on this evidence, we agree with respondent's counsel that any argument suggesting the trial court's unfitness finding was against the manifest weight of the evidence would be entirely frivolous. See *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122 (only one ground for a finding of unfitness is necessary to uphold the trial court's judgment).

¶ 70                          C. Best-Interest Finding

¶ 71        Counsel asserts he considered raising a claim suggesting the trial court's best-interest finding was against the manifest weight of the evidence but concluded any argument in

support thereof would be entirely frivolous.

¶ 72     Based on its consideration of the evidence and arguments presented as well as the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2018)), the trial court found it would be in the minor's best interest to terminate respondent's parental rights.

¶ 73     The evidence showed the minor, who was then nine years old, had been placed with her foster parents since April 2018. She had a "mother-daughter relationship" with her foster mother, who she had known since birth, and called her "mom." Her needs were being met, she had assimilated into the foster family, and she was able to maintain relationships with her extended family. The minor's foster parents expressed a willingness to provide permanency through adoption.

¶ 74     Conversely, respondent was unable to provide for the minor's most basic needs, let alone her own. Respondent continued to struggle with substance abuse and untreated mental illness. She had not completed recommended services, was charged with violating her probation in her most recent criminal case, and had a pending warrant for her arrest. The author of the best-interest report, the minor's caseworker, recommended parental rights be terminated.

¶ 75     Based on this evidence, we agree with respondent's counsel that any argument suggesting the trial court's best-interest finding was against the manifest weight of the evidence would be entirely frivolous.

¶ 76                                    III. CONCLUSION

¶ 77     Because the record reveals no issue of arguable merit to support an appeal from the judgment terminating respondent's parental rights, we grant appellate counsel's motion to

withdraw and affirm.

¶ 78          Affirmed.